**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

—————————

No. 04-1685

ADEWALE ISIAKA OLAOYE,

Petitioner,

v.

ALBERTO GONZALES, ATTORNEY GENERAL,*

Respondent.

—————————

ON PETITION FOR REVIEW OF A FINAL ORDER
OF THE BOARD OF IMMIGRATION APPEALS

—————————

Before

Selya, Lynch, and Lipez, <u>Circuit Judges</u>.

—————————

<u>Joan O. Nwuli</u> for petitioner.
<u>Peter D. Keisler</u>, Assistant Attorney General, <u>Ethan Kanter</u>, Senior Litigation Counsel, and <u>Carol Barthel</u>, Attorney, Tax Division, on brief for respondent.

—————————

September 2, 2005

—————————

———————————

\* Alberto Gonzales was sworn in as United States Attorney General on February 3, 2005. We have therefore substituted Attorney General Gonzales for John Ashcroft as the respondent. <u>See</u> Fed. R. App. P. 43(c)(2).

**Per Curiam**.   Petitioner Adewale Olaoye, a native and citizen of Nigeria, petitions for review of a decision of the Board of Immigration Appeals (BIA) affirming the denial by an Immigration Judge (IJ) of his application for asylum or withholding of removal. We deny the petition.

On December 28, 2001, traveling under a false Belizean passport, Olaoye arrived in the United States at the Miami airport, ostensibly as a "transit without visa" en route from El Salvador to the Bahamas, but with the real purpose of entering the United States.   At the airport, he was detained by the Immigration and Naturalization Service,[1] which detained him pending investigation. On January 3, 2002, the Service commenced removal proceedings. However, the Service also determined that Olaoye had a credible fear of persecution in Nigeria, and paroled him into the United States to apply for asylum.   On May 14, 2002, Olaoye conceded removability and applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).[2]

On October 16, 2002, the IJ held a hearing at which Olaoye testified as the sole witness.   According to Olaoye, he fled

---

[1]On March 1, 2003, well after the events and proceedings of this case, the relevant functions of the Service were transferred to the new Department of Homeland Security and reorganized into the Bureau of Immigration and Customs Enforcement.

[2]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85; see also 8 U.S.C. § 1231 (implementing CAT); 8 C.F.R. § 208.16(c) (same).

Nigeria, leaving his wife behind, after being attacked multiple times by members of the secretive and powerful Ogboni cult, of which his father had been a member.  The cult had sent him a death threat letter that, despite its secretive nature, included a signature, official stamp, return address, and "carbon copy" list. After he was assaulted thrice (and his wife twice) by Ogboni cult members, Olaoye fled (without his wife) by stowing away aboard a Russian trans-Atlantic vessel.  Once the vessel was at sea, Olaoye revealed himself to the captain -- an American -- and told him his story.  The captain expressed sympathy and offered to let him off on El Salvador's Gulf of Mexico coast.  He climbed off the ship in knee-deep water "off the coast" of the city of San Salvador.  After about half an hour, he found a sympathetic stranger who fed him, sheltered him, and obtained for him, without compensation, a false passport and plane ticket to the Bahamas.  The person who did these favors is known to him only as "Juan."

The IJ found Olaoye's testimony, "although consistent and detailed, to be incredible and implausible."  She found particularly unbelievable many of the details (which we have not recited here) of events in Nigeria; the death threat letter with return address;[3] and the entirety of his story of how he left

---

[3]The letter, as well as an official-looking document attesting to his father's membership, bears the stamp "Ogboni Fraternity," a possible reference to the Reformed Ogboni Fraternity, a non-secret and perfectly legal civic organization that is distinct from the secretive (and banned) Ogboni cult.

Nigeria. On her own initiative, the IJ located and introduced into the record a map of Central America, which shows that El Salvador is on the Pacific Ocean, not the Gulf of Mexico, and at any rate San Salvador is at least twenty miles inland. Overall, the IJ found Olaoye's testimony and supporting documents to be "doctored, untrue, nonsensical, implausible and internally inconsistent." Consequently, she denied his applications for asylum and withholding of removal, and furthermore found that he had knowingly filed a frivolous application, which can result in a permanent ban from entry into the United States. See 8 U.S.C. § 1158(d)(6).

On appeal, the BIA vacated the IJ's finding that Olaoye had knowingly filed a frivolous application, but affirmed the findings that Olaoye was not entitled to asylum or withholding of removal. It further found that he was not entitled to protection under the CAT.[4] Olaoye timely appealed the denial of asylum and withholding of removal.

Since the BIA's order adopted the IJ's decision and findings with regard to the issues presented on appeal, we review the IJ's decision as the adopted final agency determination. Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

_____

[4]The IJ appears not to have adjudicated Olaoye's claim for protection under the CAT. However, Olaoye does not argue that the BIA erred in denying him such relief, and has thus waived any challenge to the BIA's resolution of that claim. Chen v. Gonzales, No. 04-2623, 2005 U.S. App. LEXIS 16908, at *3 n.3 (1st Cir. Aug. 12, 2005).

"Determinations of eligibility for asylum or withholding deportation are conclusive 'if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. at 372 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This deferential standard means that "[t]o reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it." Elias-Zacarias, 502 U.S. at 481 n.1.

In this case, the IJ's adverse credibility determination is amply supported in the record and by the specific reasons stated in her oral decision. As the IJ explained, certain aspects of Olaoye's story -- particularly the supposed death threat letter and the story of how he reached the United States -- are implausible. The IJ was entitled to conclude that, because Olaoye was not credible in numerous parts of his story, he was not credible in any of it. Olaoye gives us no reason to doubt the IJ's adverse credibility finding, and we certainly cannot say that the evidence compels the conclusion that the IJ erred.

The petition for review is **denied**.